UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21573-CIV-HOEVELER

CONTRACT LOGISTICS, INC.,
f/u/b/o Watkins Syndicate WTK0457,

    Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on the parties' cross motions for summary judgment. Plaintiff, Contract Logistics, Inc. (CLI) claims that Defendant, Scottsdale Insurance Company (Scottsdale), improperly denied a claim for benefits presented by CLI for losses incurred as a result of a theft from CLI's warehouse. Defendant argues that the policy it issued to CLI explicitly excludes from coverage any damage to personal property in the care, custody or control of the insured and, as the stolen goods were personal property in CLI's care, Scottsdale had no obligation to pay for the loss.

### BACKGROUND

The parties have stipulated to the following facts. CLI applied for a policy of insurance from Scottsdale for warehouse and trucking and commercial general liability. Scottsdale issued Policy No. CLS 1093132 for the period January 24, 2005, to January 24, 2006.

On September 21, 2005, several computer media cards and other computer equipment were stolen from the CLI warehouse.[1] The stolen equipment had been received by CLI and was being stored temporarily for local delivery, pursuant to a contract between Stonepath Logistics, Inc., and CLI. The contract between Stonepath and CLI included an indemnity provision, such that CLI assumed full liability for goods stolen while in its "possession, custody, or control."

As a result of the lost goods, a subrogee - American Home Insurance Co. - of the cargo's owner filed suit against Stonepath Logistics and CLI.[2] The claim against Stonepath was based on a contract for transportation and delivery of the goods, and the claim against CLI was because CLI was the bailee of the goods. In response, Stonepath - through its underwriters, Watkins Syndicate WTK 0457 - filed a crossclaim against CLI for general and contractual indemnity, based on the indemnity provisions of the parties' contract (at paragraphs 11 and 12) for loss or damage to commodities being transported and for property under CLI's care.

The action between American Home Insurance Co. and Stonepath (through its underwriters, Watkins Syndicate WTK 0457), was settled for $104,349.91. CLI then

---

[1]The warehouse in which the goods were stored had been rented by CLI for a period of at least one week - a relevant fact to the terms of the policy.

[2]The cargo's owner was MA Laboratories, according to the complaint filed in Case No. 06-22507-CIV, the suit filed by American Home against Stonepath and CLI. According to that complaint, American Home paid $202,721.50 in settlement of its insured's losses totaling more than $350,000.00 from a total of eight shipments of computer parts (sent from MA Laboratories in September - November 2005, but never delivered to their final destination - apparently due to the theft while at CLI's warehouse).

2

submitted the demand for indemnity (which had been made in the crossclaim filed against CLI by Stonepath) to its insurer, Scottsdale. Scottsdale denied coverage. CLI then assigned to Watkins Syndicate WTK 0457 the proceeds from any actions CLI has against Scottsdale.

## ANALYSIS

Insurance contracts are to be construed in accordance with their plain language. Fayad v. Claredon Nat'l Ins. Co., 899 So. 2d 1082, 1085 (Fla. 2005). "In the absence of ambiguity in the policy language ... rules of construction are unnecessary and the courts will apply the plain language of the policy." Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1327 (11th Cir. 2005). An insurance policy is ambiguous when its terms are subject to different reasonable interpretations, one of coverage and one of exclusion. Cont'l Ins. Co. v. Roberts, 410 F.3d 1331, 1333 (11th Cir. 2005). If an insurance policy is ambiguous, the ambiguity must be resolved against the insurer, and in favor of coverage. Id. "The lack of a definition of an operative term in the policy does not necessarily render the term ambiguous and in need of interpretation by the courts." Certain Interested Underwriters at Lloyd's London v. Halikoytakis, 2011 U.S. Dist. LEXIS 39807, 13-15 (M.D. Fla. Mar. 31, 2011)(quoting State Farm Fire & Cas. Co. v CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla. 1988).

The insurance policy issued to CLI by Scottsdale provides:

We will pay those sums that the insured becomes legally obligated to pay as

3

damages because of "bodily injury" or "property damage" <u>to which this insurance applies</u>. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Coverage A Bodily Injury and Property Damage Liability (emphasis added). Thus, coverage exists for losses "to which this insurance applies." Property damage is defined in the Policy, in relevant part, as "[l]oss of use of tangible property that is not physically injured." Section V, Definitions, 17.b. As the theft of the computer equipment from CLI's warehouse meets the definition of "property damage" contained in this coverage section of the policy, the Court must then examine whether this loss is a loss as to which the insurance applies.

According to Exclusion j(4) of the policy, "property damage" to "[p]ersonal property in the care, custody or control of the insured" is excluded from coverage.[3] "Personal property" is not defined in the policy. Scottsdale contends that the policy's "care, custody or control" exclusion in Exclusion j(4) applies and bars coverage for the property stolen from CLI's warehouse. CLI does not dispute that the stolen property at issue was within its care, custody or control,[4] but instead argues that the

---

[3]This exclusion does not apply to damage to property on premises rented to the insured for a period of one week or less. (Policy Form CG 00 01 12 04, Section I - Coverages, Exclusion (j)(4), pp. 4-5 of 15.)

[4]Florida law recognizes that bailment includes a transfer of "exclusive possession ... or sole custody and control" of another's property to the bailee. <u>S & W Air Vac Systems, Inc. v. Dept. of Revenue, State of Florida</u>, 697 So. 2d 1314, 1315 (Fla. Dist. Ct. App. 1997); as the bailee of the computer equipment, CLI had exclusive right of possession at the time the goods were stolen. Indeed, the contract between Stonepath and CLI included an indemnity provision, such that CLI

4

undefined term "personal property" in the clause excluding coverage is ambiguous and therefore must be construed against the insurer.

As is evident from the discussion above, this case turns on the interpretation of the term "personal property" in exclusion j(4) of the policy. If the stolen goods are "personal property" then the loss is not covered, by application of this exclusion. Defendant argues that "personal property" is defined as any "moveable or intangible thing that is subject to ownership and not classified as real property", citing Black's Law Dictionary (9th ed. 2009). CLI responds that "personal property" should be defined according to a more general "in-the-street" understanding of the term, such that personal property is understood to be consumer-type goods in possession of an individual, and CLI argues that the term does not refer to a commercial shipment of hundreds of boxes of computer parts. The Court disagrees, and notes that cases referencing "person-on-the-street" definitions nevertheless are grounded in dictionary definitions. Applying the definition found in Black's Law Dictionary, the Court finds that the stolen computer equipment is personal property: the equipment was moveable (as evidenced by the theft), was not classified as real property, and was subject to ownership. As Scottsdale's policy of insurance with CLI clearly excluded damage to personal property in the control of CLI, the Court finds that Plaintiff is not entitled to recover for this loss.

Plaintiff has not identified any other provision of the policy, i.e., the

---

assumed full liability for goods stolen while in its "possession, custody or control."

5

contractual agreement between the parties, which clearly provides coverage for the stolen goods - instead, Plaintiff argues that this loss is a covered loss because it does not meet one of the other Exclusions of the policy. According to Plaintiff, the loss meets two of the defined exceptions to an Exclusion in the policy for contractually-incurred liability on the part of the insured and, thus, coverage can be inferred. The Court disagrees.

The policy excludes "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Exclusion 2(b). It is clear from CLI's contract with Stonepath that CLI assumed full liability for "any and all loss ... of any kind" while the property was under CLI's care; thus, CLI assumed liability for damages and as such the policy exclusion applies. However, Exclusion 2(b) expressly states that the Exclusion does not apply to liability for damages that "the insured would have in the absence of the contract or agreement";[5] Plaintiff argues that CLI would have liability for this loss in the absence of its contract with Stonepath - which Defendant does not specifically dispute - and, as such, this exception to Exclusion 2(b) applies, i.e., the claimed loss is not subject to this particular Exclusion from coverage. The fact that a claimed loss does not meet one of the Exclusions does not, however, imply the existence of coverage. For example, it is clear that this loss does not meet several of the other

---

[5] Presumably, this provision addresses the insurer's concern that an insured not accept risks (unpredicted by the insurer) by assuming obligations in a contract if such risks would not be within the normal scope of the liability for which the insurer is insuring its insured.

Exclusions in this policy, but that is an insufficient basis for a finding that this is a covered loss.

"[T]he existence or nonexistence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss." Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 740 (Fla. 2002)("policy exclusions cannot create coverage where there is no coverage in the first place", citing U.S. Fire Insur. Co. v. Meridian of Palm Beach Condominium Assoc., 700 So. 2d 161 (Fla. Dist. Ct. App. 1997)). As Plaintiff has not affirmatively established the existence of coverage - indeed, the policy describes that it covers property damage losses "to which this insurance applies" - the Court cannot imply that coverage exists simply because the loss meets an exception to an Exclusion.

Plaintiff also argues that another exception to Exclusion 2(b) applies and creates coverage. Exclusion 2(b) - relating to contractual liability - does not apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract'". Plaintiff argues that this provision applies to the facts herein, with the result that this loss should be covered. An "insured contract" is defined, in pertinent part, as a contract "pertaining to your business ... under which you assume the tort liability of another party to pay for ... 'property damage' to a third person or organization, provided the ...'property damage' is caused, in whole or in part, by you or by those acting on your behalf. Section V, Definitions, 9(f) (as amended by Endorsement CG 24 26 07 04) (emphasis added). "Tort liability means a liability that

7

would be imposed by law in the absence of any contract or agreement." The contract between CLI and Stonepath did include an assumption of liability by CLI for all losses, which presumably includes "tort liability of another party" - but it has not been established in the record before the Court that the loss, i.e., the theft, was "caused, in whole or in part, by [CLI] or those acting on [CLI's] behalf." As such, the Court cannot find that this exception to Exclusion 2(b) of the policy applies.[6] Moreover, as stated above, even if this exception to Exclusion 2(b) applied, it would not create coverage where the policy does not otherwise provide coverage.

Based on the above, it is

ORDERED AND ADJUDGED that the Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED.

DONE AND ORDERED in Miami, Florida this 7⟨th⟩ day of ~~September~~ October 2011.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

cc:  counsel of record

---

[6] Endorsement (CG22 29 11 85) to the policy provides that operators of miniwarehouses and cold individual storage lockers do not have coverage for property damage to property of others "[e]ntrusted to you for safekeeping" or "[o]n premises owned by or rented to you." Plaintiff argues - unpersuasively - that this Endorsement - which does not apply to Plaintiff's claimed loss - implies that coverage for such property is included in the policy's other provisions, as there would be no need to state that such losses are not covered in an Endorsement if the policy was unambiguous in its terms.

8